OPINION
CLIFTON, Circuit Judge:
Adolph Anthony Sanchez Gonzalez was shot and killed during an encounter with two Anaheim police officers. His successors brought an action seeking damages under 42 U.S.C. § 1983. The district court entered summary judgment in favor of defendants.
Because Gonzalez is dead, the police officers are the only witnesses able to testify as to the events that led to Gonzalez’s death. In such a circumstance, we must carefully examine the evidence in the record to determine whether the officers’ testimony is internally consistent and consistent with other known facts. After conducting such a review, we conclude that a significant inconsistency in the officers’ testimony was sufficient to present a genuine dispute of material fact. Based on the current record, summary judgment on the plaintiffs’ claim for deadly excessive force was inappropriate. We reverse and remand that claim for further proceedings.
In addition to the excessive force claim brought on behalf of Gonzalez, the plaintiffs also brought claims in their own right for the denial of a familial relationship. The district court granted summary judgment for defendants as to those claims as *792 well. As to that portion of the judgment, we affirm.
I. Background
As noted above, the only testimony concerning the events that led to Gonzalez’s death came from the two police officers involved in the incident, Anaheim Police Department Officers Daron Wyatt and Matthew Ellis. They testified that they first noticed Gonzalez when they were responding in their patrol car to an unrelated call at about 2 a.m. on September 25, 2009. A Mazda minivan cut them off as they were making a turn. The minivan turned into a gas station, and the officers continued on their way.
A few minutes later, the officers returned to the area where they had been cut off and noticed that the minivan was still at the gas station. Gonzalez got in the car and began driving southbound. The officers followed him. They observed the minivan weaving within its traffic lane. Although weaving within a lane was not a traffic. violation, as Ellis later acknowledged, the officers decided to make a traffic stop and pulled Gonzalez over.
At that time, the officers did not recognize the driver from any prior contacts. They did not have any information that the minivan had been stolen or had outstanding warrants or citations. They had no information that the driver had previously committed any crime, had any prior contact with law enforcement, or had any involvement with weapons. At no point during the entire incident did either officer ever see a weapon in the minivan.
The officers exited their vehicle and approached the minivan from both sides. Ellis approached from the driver’s side, and Wyatt approached from the passenger side. Wyatt drew his gun. Wyatt thought he saw Gonzalez reach for something between the driver and passenger seats and warned Gonzalez that if he reached down again, Wyatt would shoot. Gonzalez at that point complied and held his fists in his lap.
The officers told Gonzalez to turn off the vehicle and open his hands, which he held clenched. Ellis tried to open the driver’s side door, but it was locked. The officers reached through the minivan’s open windows and opened the driver and passenger side doors. Ellis saw Gonzalez pull his hand out of a bag located between the two front seats. Ellis observed a plastic bag in Gonzalez’s right fist. Ellis told Gonzalez to turn off the vehicle and give him his hands. Gonzalez did not respond to that command.
Wyatt reached into the car, struck Gonzalez’s elbow three times with a flashlight, and told Gonzalez to open his hand. Gonzalez then raised his hand up to his mouth, as if to swallow what he was holding. Ellis grabbed Gonzalez. Wyatt testified that he thought Ellis was trying to apply a carotid restraint, but Ellis testified that he was only trying to gain control of Gonzalez’s hands. Wyatt also observed that Gonzalez had a clenched fist and was reaching downward with his left hand. Wyatt called for assistance on his police radio. Wyatt went around to the driver’s side to try to help Ellis restrain Gonzalez, but was not able to do so.
Wyatt went back to the passenger side, entered the minivan, and began punching Gonzalez in the head. Ellis observed Gonzalez reaching for the minivan’s gear shift with his right hand. Ellis thought Gonzalez was attempting to shift the car into drive so Ellis used his flashlight to hit Gonzalez on the back of the head to try to stop him.
Despite the officers’ efforts, Gonzalez managed to shift the' minivan into drive, and the minivan began moving. Ellis *793 withdrew from the vehicle as it began moving and struck Gonzalez in the head as he did so. The front passenger door closed behind Wyatt, who remained in the vehicle.
Ellis stated that Gonzalez “stomp[ed]” on the accelerator. Wyatt said that Gonzalez “floored the accelerator” and that the vehicle “violently accelerated.”
Wyatt yelled at Gonzalez to stop the car, but he kept going. Gonzalez swatted Wyatt’s hand away as he tried to turn off the ignition or shift the transmission to neutral or park. Unable to stop or gain control of the ear, Wyatt drew his weapon and shot Gonzalez in the head, killing him. He shot from a distance of less than six inches. The minivan hit a parked car and came to a stop.
Wyatt testified that he fired the shot less than ten seconds after the car started moving, and it could have been less than five seconds. He estimated that the car moved approximately 50 feet in that time and was going 50 miles per hour at the time of the shot.
Gonzalez’s father sued the officers and the City of Anaheim under 42 U.S.C. § 1983. He brought claims as -his son’s successor for excessive force in violation of the Fourth Amendment and on behalf of himself for denial of a familial relationship in violation of the Fourteenth Amendment. Gonzalez’s mother and daughter filed a similar action that also raised various state law claims. The district court consolidated the actions.
The defendants moved for summary judgment, and the district court granted the motion. The district court held that the force the officers used during their encounter with Gonzalez was reasonable and that their conduct did not violate the Fourteenth Amendment. Having disposed of the federal claims, the district court declined to exercise supplemental jurisdiction over the remaining state law claims. Gonzalez’s mother and daughter appeal the district court’s grant of summary judgment.
II. Discussion
We review a district court’s grant of summary, judgment de novo to determine whether there are any genuine disputes of material fact and whether the moving party is entitled to judgment as a matter of law. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir.2011). We view the evidence in the light most favorable to the nonmoving party. Id.

A. Fourth Amendment Claim

Gonzalez’s representatives argue that genuine disputes of material fact preclude summary judgment on their claim that the officers used unreasonable deadly force against Gonzalez. We agree.
 “An officer’s use of deadly force is reasonable only if ‘the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.’ ” Scott v. Henrich, 39 F.3d 912, 914 (9th Cir.1994) (emphasis omitted) (quoting Tennessee v. Garner, 471 U.S. 1, 3, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). Factors relevant to assessing whether an officer’s use of force was objectively reasonable include “the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.” Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The immediacy of the threat posed by the suspect is the most important factor. Mottos v. Agarano, 661 F.3d 433, 441 (9th Cir.2011) (en banc). These factors are not exclusive, and we consider the totality of *794 the circumstances. Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir.2010).
In general, we have recognized that an officer must give a warning before using deadly force “whenever practicable.” Harris v. Roderick, 126 F.3d 1189, 1201 (9th Cir.1997) (citing Garner, 471 U.S. at 11-12, 105 S.Ct. 1694). Also relevant to reasonableness are the “alternative methods of capturing or subduing a suspect” available to the officers. Smith v. City of Hemet, 394 F.3d 689, 703 (9th Cir.2005) (en banc).
We take the perspective of an officer on the scene without the benefit of 20/20 hindsight and consider that “police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving- — about the amount of force that is necessary in a particular situation.” Graham, 490 U.S. at 396-97, 109 S.Ct. 1865.
The key issue in this case is whether a reasonable jury would necessarily find that Wyatt perceived an immediate threat of death or serious physical injury at the time he shot Gonzalez in the head.[1] That requires us to consider exactly what was happening when the shot was fired.
As described above, Ellis testified that Gonzalez “stomp[ed]” on the accelerator, and Wyatt said that Gonzalez “floored” it. Wyatt specifically testified that the minivan “violently accelerated.” But that is not entirely consistent with Wyatt’s other testimony. His story was that the minivan moved 50 feet in five to ten seconds but was going 50 miles per hour when he shot.
That combination of facts appears to be physically impossible. There are three pieces to this puzzle: the speed of the minivan at the time of the shot, the distance it traveled, and the time that elapsed. These pieces don’t fit together. As plaintiffs argued to the district court, a vehicle that traveled 50 feet in ten seconds would have an average speed of only . 3.4 miles per hour. If the time period is cut to five seconds, the average speed increases only to 6.8 miles per hour. Even accepting that the minivan would be gaining speed while accelerating, an average speed of 3 to 7 miles per hour appears inconsistent with Wyatt’s testimony as to the speed of the vehicle and with the testimony of both Wyatt and Ellis that Gonzalez floored or stomped down on the gas.
“Deadly force cases pose a particularly difficult problem ... because the officer defendant is often the only surviving eyewitness.” Henrich, 39 F.3d at 915. This is one of those difficult cases. Gonza *795 lez cannot testify because he is dead, and no other witnesses saw the incident. In such cases, we “must ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story — the person shot dead — is unable to testify.” Id. Accordingly, we carefully examine “all the evidence in the record, such as medical reports, contemporaneous statements by the officer and the available physical evidence, ... to determine whether the officer’s story is internally consistent and consistent with other known facts.” Id. We must also examine “circumstantial evidence that, if believed, would tend to discredit the police officer’s story.” Id. We have held that summary judgment should be granted sparingly in excessive force cases. Glenn v. Washington County, 673 F.3d 864, 871 (9th Cir.2011). This principle applies with particular force where the only witness other than the officers was killed during the encounter.
Based on the record before us, a jury could believe Wyatt’s testimony that the minivan traveled about 50 feet before the shot was fired and that less than five or ten seconds passed between the time the vehicle started moving and the time Wyatt fired the shot. See Long v. Johnson, 736 F.3d 891, 896 (9th Cir.2013) (explaining that “we must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts” (internal quotation marks and brackets omitted)).
Although it was argued that the actual distance traveled by the minivan by the time the shot was fired was substantially greater than 50 feet, defendants did not submit evidence to that effect. There was plenty of time after the episode took place to check how far the minivan traveled. It seems likely that there would have been an incident report that would have included descriptions and precise measurements taken afterwards, but defendants did not offer anything like that into evidence. Based on the record, a rational jury was not required to assume that the distance traveled was greater' than Wyatt’s estimate. Moreover, as it is our obligation to view the evidence in the light most favorable to the nonmoving parties at summary judgment, we cannot simply dismiss the internal contradictions in Wyatt’s testimony. Johnson, 658 F.3d at 960.
A reasonable jury could accept at face value Wyatt’s statements that the car moved approximately 50 feet in about five to ten seconds before he shot Gonzalez. It could thus find that the minivan was not traveling at a high rate of speed and Wyatt did not reasonably perceive an immediate threat of death or serious bodily injury at the time he shot Gonzalez in the head.
The primary dissenting opinion, by Judge Trott, suggests, at 47, that because the plaintiffs did not dispute that Gonzalez “stomp[ed]” down on the gas pedal, summary judgment must be affirmed. But it was the speed of the minivan, not whether Gonzalez stomped on the gas pedal, that was the key disputed material fact.
The premise of the primary dissent is that the officer acted in response to an immediate threat to his safety or the safety of others. We do not disagree with most of what the primary dissent says.[2] *796 But the existence of an immediate threat to safety in this case is based on the sudden acceleration and speed of the van. Gonzalez’s action could not have presented a threat sufficient to justify the use of deadly force unless it caused the car to move in a way that immediately threatened the safety of the officers or the public. The defendants did not argue that such a threat was posed if the minivan was actually going only 3 to 7 miles per hour. They argued that “[t]he undisputed evidence is that decedent was speeding down the street going approximately 40 to 50 MPH with Officer Wyatt trapped inside the van.” If that were true, we agree that summary judgment in favor of defendants would be appropriate, as the primary dissenting opinion contends. There was a genuine dispute about that fact, however, based on Wyatt’s own testimony. This case is about the standard for summary judgment, not whether law enforcement officers face danger and are permitted to use deadly force when faced with an immediate threat to safety.
A jury that found that the minivan was moving slowly could reasonably infer that Gonzalez did not stomp on the accelerator, or that he let off the accelerator even if he stomped down at first, or that a mechanical failure prevented the car from reaching dangerous speeds. Regardless of whether they disputed the use of the word “stomp,” the plaintiffs explicitly argued to the district court and to us that the minivan was not going very fast, based on Wyatt’s own testimony, and thus that Wyatt did not face an immediate threat of death or serious bodily injury. On this record, the “stomping” does not preclude a triable issue on Wyatt’s use of deadly force.
Our decision in Wilkinson v. Torres, 610 F.3d 546 (9th Cir.2010), a case that also involved an accelerating minivan, does not require the conclusion that the use of deadly force against Gonzalez was reasonable as a matter of law. In Wilkinson, we did not hold that the threat of sudden acceleration always justifies the use of deadly force. Instead, we emphasized the importance of considering all the facts in excessive force cases. Id. at 551. The officer in Wilkinson was standing near a minivan that was trying to accelerate. Id. The minivan’s wheels were spinning and throwing up mud because the driver was attempting to accelerate in a slippery area. Id. The officer thought his partner may have already been run over by the minivan once and was lying or standing in the mud nearby, possibly disoriented, at risk of being hit again. Id. The officer shot the driver. Id. The plaintiffs argued that the vehicle was moving too slowly to endanger the officers. Id. We decided that, even so, the car “could have gained traction at any time, resulting in a sudden acceleration in speed,” while the officer believed his partner to be vulnerable. Id. at 552. Given these facts, we concluded that there was no genuine dispute of material fact as to whether the officer’s use of deadly force was reasonable.
Here, Wyatt was not on foot next to a vehicle that might run him over at any moment should it have accelerated, and he did not express concern that his partner was vulnerable to being run over. The defendants presented no evidence of anyone else in danger. Instead, Wyatt was *797 inside a car that might have been slowly rolling forward. Wilkinson does not answer the question in this case. Based on the current record, a jury could find that Wyatt did not act reasonably.
Similarly, a jury could find that Wyatt reasonably perceived a threat, but not one that justified the immediate use of deadly force. As noted above, the jury may consider the availability of other methods to subdue a suspect. Wyatt had a police baton, pepper spray, and a taser. He could have used any of them, or he could have shot Gonzalez in a nonlethal area of the body to try to stop him from driving further. Instead, he used his gun and intentionally shot Gonzalez in the head. If the jury found that the car was moving slowly at the time, it could also find that other alternatives could have been used and that the use of deadly force was unreasonable. See Smith, 394 F.3d at 703.
A jury could also find that Wyatt failed to give a warning before he shot Gonzalez in the head. The absence of a warning does not necessarily mean that Wyatt’s use of deadly force was unreasonable. See Scott, 550 U.S. at 383, 127 S.Ct. 1769 (explaining that there is no “easy-to-apply-legal test” in excessive force cases). A rational jury may find, however, that if the car was moving at an average speed of 3 to 7 miles per hour, a warning was practicable and the failure to give one might weigh against reasonableness. See Deorle v. Rutherford, 272 F.3d 1272, 1283-84 (9th Cir.2001).
We do not hold that a reasonable jury must find in favor of the plaintiffs on this record, only that it could. The jury could also reasonably find, to the contrary, that the minivan was moving dangerously fast and that Wyatt reasonably perceived an immediate threat to his .safety sufficient to support the use of deadly force. Other factors identified in Graham would support a verdict in favor of the defendants here, as well. By the time Wyatt pulled the trigger, the crimes at issue were relatively severe and Gonzalez was plainly resisting arrest or attempting to evade arrest by flight. See Graham, 490 U.S. at 396, 109 S.Ct. 1865. But based on the record before us, we cannot say that a verdict in favor of the defendants on the claim for excessive force is the only conclusion that a reasonable jury could reach.[3]

B. Fourteenth Amendment Claim

The plaintiffs also assert on their own behalf, as Gonzalez’s relatives, that they have been deprived of a familial relationship with Gonzalez in violation of their Fourteenth Amendment right to substantive due process. Such a claim requires the plaintiffs to prove that the officers’ use of force “shock[ed] the conscience.” Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir.2008). Based on the record, a reasonable jury could not so find. Where, as here, the officers did not have time to deliberate, a use of force shocks the conscience only if the officers had a “purpose to harm” the decedent for reasons unrelated to legitimate law enforcement objectives. Id. The plaintiffs *798 produced no evidence that the officers had any ulterior motives for using force against Gonzalez, and the district court properly granted summary judgment on this claim. See Karam v. City of Burbank, 352 F.3d 1188, 1194 (9th Cir.2003) (explaining that “speculation as to ... improper motive does not rise to the level of evidence sufficient to survive summary judgment”).
III. Conclusion
For the foregoing reasons, the district court’s grant of summary judgment as to the Fourth Amendment excessive deadly force claim is reversed and remanded. The district court’s grant of summary judgment as to the Fourteenth Amendment claim and the non-deadly force portion of the Fourth Amendment claim is affirmed.
Each party shall bear its own costs.
AFFIRMED IN PART AND REVERSED IN PART; REMANDED.

. The primary dissenting opinion, by Judge Trott, suggests, at 800-01, that the question at summary judgment of whether a law enforcement officer's actions were objectively reasonable is a question of law, not a question of fact for the jury, citing Scott v. Harris, 550 U.S. 372, 381 n. 8, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). But as that footnote in Scott makes clear, that does not change the standard to be applied to the question presented by this case. The footnote as a whole states:
Justice STEVENS incorrectly declares this to be "a question of fact best reserved for a jury,” and complains we are "usurping] the jury’s factfinding function.” At the summary judgment stage, however, once we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record, the reasonableness of Scott's actions — or, in Justice STEVENS’ parlance, “[wjhether [respondent's] actions have risen to a level warranting deadly force” — is a pure question of law.
Id. (citations omitted) (emphasis in original). The dispute in this case concerns the relevant set of facts, in particular whether the minivan had violently accelerated and was moving at a high rate of speed. That remains a question of fact for the jury, as to which we must draw all inferences in favor of the nonmoving party at the summary judgment stage.

. We disagree with the view in the separate dissent by Chief Judge Kozinski, at 814, that any "sane officer” would have shot Gonzalez in the head, no matter "[h]ow fast the van was moving.” The defendants have not tried to make that argument, and we are not compelled by either logic or existing precedent to accept that proposition. As explained below, if the jury found, as it could, that Officer Wyatt was in the passenger seat of a slowly *796 rolling vehicle, it could conclude that he did not face an immediate threat to safety sufficient to justify the immediate use of deadly force. Our decision simply identifies a disputed issue of material fact. If, as Chief Judge Kozinski's dissent bemoans, that gives plaintiffs "a bludgeon with which to extort a hefty settlement,” id., it will only be because the defendants are concerned that a jury might not view the evidence as the dissent does.

. The constitutional standard for using force less than deadly force is lower. See Gregory v. County of Maui, 523 F.3d 1103, 1106-07 (9th Cir.2008) (holding that "officers had substantial grounds for believing that some degree of force was necessary” where suspect was possibly under the influence of drugs, acting bizarrely, trespassing, and refusing repeated commands to drop a pen). Because it is undisputed that Gonzalez did not respond to the officers’ directions before any force was applied, appeared to be trying to swallow potential evidence, and began driving away, the defendants were entitled to summary judgment on the uses of force leading up to the gunshot, such as striking Gonzalez with a flashlight or hitting him in the head as he shifted the minivan into gear.