**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JENNIFER ANN DONOVAN, | No. 15-15605 |
| Plaintiff-Appellant, | D.C. No. 3:14-cv-00680-CRB |
| v. | |
| J. A. PHILLIPS, | MEMORANDUM * |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted March 14, 2017
San Francisco, California

Before: FERNANDEZ, MURGUIA, and WATFORD, Circuit Judges.

Plaintiff Jennifer Donovan appeals the district court's grant of summary

judgment in favor of Defendant Joshua Phillips in her 42 U.S.C. § 1983 action

alleging excessive force and bad-faith arrest. We have jurisdiction pursuant to 28

U.S.C. § 1291, and we affirm.

1.     We review de novo both a grant of summary judgment and a grant of

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

summary judgment on qualified immunity grounds. *Blankenhorn v. City of Orange*, 485 F.3d 463, 470 (9th Cir. 2007). In analyzing qualified immunity, we employ a two-prong analysis; we determine whether the facts show the government actor's "conduct violated a constitutional right," and "whether the right was clearly established" at the time of the alleged unlawful action. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009).

2.      The district court properly granted summary judgment on Donovan's excessive force claim. The Fourth Amendment prohibits the use of "excessive force" arising in the context of an arrest or investigatory stop, and all claims of excessive force are analyzed under the Fourth Amendment's "reasonableness" standard, using the framework the Supreme Court set forth in *Graham v. Connor*, 490 U.S. 386 (1989). The objective reasonableness standard balances: (1) "'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against (2) "the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). In balancing the competing interests, we must be mindful that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

2

3.    Here, the video recording of the traffic stop shows that the nature and quality of the intrusion on Donovan's personal security were relatively minimal. After Donovan failed to comply with Officer Phillips' repeated orders to remain in her vehicle while Officer Phillips administered a field sobriety test to Donovan's partner, Officer Phillips placed Donovan in a control hold. Officer Phillips approached Donovan, gripped her wrist, and pulled her arm downward, causing Donovan to roll onto the ground. Even assuming Donovan made no aggressive movements towards Officer Phillips before his use of force, under the totality of the circumstances, Officer Phillips had a substantial interest in taking the necessary steps to secure Donovan quickly once she exited her car.  The Supreme Court has expressly recognized that traffic stops "are especially fraught with danger to police officers." *Arizona v. Johnson*, 555 U.S. 323, 330 (2009) (internal quotation marks and citation omitted). Further, Officer Phillips was outnumbered and, because Donovan refused to comply with his orders to stay in her vehicle, Officer Phillips had to monitor two potentially intoxicated individuals on the side of a highway at night. *See Gonzalez v. City of Anaheim*, 747 F.3d 789, 804 (9th Cir. 2014) (recognizing that the inherent safety considerations surrounding traffic stops "have even greater salience" when an officer suspects an individual is intoxicated). Because Officer Phillips used minimal force against Donovan and, under the circumstances, his interest in quickly securing her was significant, Officer Phillips'

use of force was reasonable as a matter of law.

4. Even if we were to conclude that there was a triable issue as to whether Officer Phillips' use of force against Donovan was objectively excessive, Officer Phillips is entitled to qualified immunity under the second prong of our analysis. *See Pearson*, 555 U.S. at 236. At the time Officer Phillips arrested Donovan, it was well-settled that the Fourth Amendment prohibits the use of "excessive force" arising in the context of an arrest or investigatory stop. *See Graham*, 490 U.S. at 395–96. At the same time, however, it was not beyond debate that the totality of the circumstances surrounding Officer Phillips' seizure of Donovan would indicate that his use of force was clearly unreasonable. *See Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011) (noting that the Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality" (citation omitted)).

5. Officer Phillips' conduct was in-line with the California Highway Patrol's Highway Patrol Manual, which indicates that an officer may appropriately employ a "control hold" when a subject is "not respond[ing] to verbal commands but also offers no physical form of resistance." *See Chew v. Gates*, 27 F.3d 1432, 1446–47 (9th Cir. 1994) (holding that the officers were entitled to qualified immunity because, even if their use of a police dog to effect the suspect's arrest constituted excessive force, the officers could not have known that the

4

department's canine policy was unconstitutional). Further, there is no Ninth Circuit or Supreme Court authority that could have provided Officer Phillips with sufficient fair notice that his use of a control hold, under the circumstances in this case, would violate federal constitutional law. *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065 (9th Cir. 2006) ("To determine whether a right is clearly established, the reviewing court must consider whether a reasonable officer would recognize that his or her conduct violate[d] that right under the circumstances faced, and in light of the law that existed at that time."). Without such fair notice, we hold that Officer Phillips is entitled to qualified immunity.

6.    The district court also properly granted summary judgment on Donovan's bad-faith arrest claim. Officer Phillips had probable cause to arrest Donovan for a violation of California Penal Code § 148(a)(1). *See* Cal. Pen. Code § 148(a)(1) (making it a misdemeanor to "willfully resist[], delay[], or obstruct[] any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment"). The existence of probable cause defeats Donovan's bad-faith arrest claim. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *Allen v. McCurry*, 449 U.S. 90, 103 n.18 (1980) (stating that "a state court decision that the police acted legally [i.e., with

probable cause] cannot but foreclose a [§ 1983] claim that they acted in bad faith").

**AFFIRMED.**

*Donovan v. Phillips*, No. 15-15605

WATFORD, Circuit Judge, dissenting:

I would reverse on the Fourth Amendment excessive force claim. Our cases require that a jury be permitted to decide whether the force used by the officer against Jennifer Donovan was objectively reasonable or not.

The familiar framework from *Graham v. Connor*, 490 U.S. 386 (1989), guides the objective reasonableness analysis. That framework calls for balancing the severity of the force used by the officer against the government's countervailing justifications for deploying that level of force. *Id.* at 396; *Young v. County of Los Angeles*, 655 F.3d 1156, 1161 (9th Cir. 2011).

The level of force used here was not lethal, but it was nonetheless far from trivial. The officer walked up to Donovan and asked her, "Is there going to be a problem?" Then, without warning, he put her in a wrist lock and threw her to the ground, causing her to fall on her right shoulder. The fall injured Donovan's rotator cuff, an injury that continued to hobble her two years after the incident occurred in October 2012.

Against that intrusion on Donovan's Fourth Amendment interests, we must balance the government's justifications for using that level of force. That inquiry entails examining, among other factors, the severity of the crime Donovan was suspected of committing, whether she posed an immediate threat to the safety of

the officer or others, and whether she was actively resisting arrest or attempting to flee. *Young*, 655 F.3d at 1163. Whether Donovan posed a threat to the safety of the officer or others is the most important of these considerations. *Id.*

Each of these factors weighs in favor of a determination that the officer's use of force was objectively unreasonable. First, the crime Donovan committed was, at most, a non-violent misdemeanor—disobeying the officer's order to stay in the car, in violation of California Penal Code § 148(a)(1). We have previously observed that minor offenses of this sort "will tend to justify force in far fewer circumstances than more serious offenses, such as violent felonies." *Young*, 655 F.3d at 1165. Second, taking the facts in the light most favorable to Donovan (as we must on summary judgment), Donovan posed no threat to the officer or anyone else. She got out of the car and took two or three steps in the officer's direction with her hands outstretched, palms up, in a posture that merely asked, "What's going on?" She was not acting aggressively and said nothing to the officer that could remotely be deemed threatening. And third, Donovan was not actively resisting arrest or attempting to flee—indeed, the officer had not yet told her she was under arrest when he threw her to the ground. She was doing nothing more than offering passive resistance by refusing to comply with the officer's commands to stay in the car.

To determine whether Donovan's Fourth Amendment rights were violated, "we must balance the amount of force applied against the need for that force." *Bryan v. MacPherson*, 630 F.3d 805, 823–24 (9th Cir. 2010) (internal quotation marks omitted). In my view, a rational jury could strike that balance in Donovan's favor. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 478–79 (9th Cir. 2007). We have explicitly held that when confronted with a passively resisting suspect who poses no safety threat and is not attempting to flee, an officer may employ no more than trivial force to gain compliance. *Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012). The law on this point was clearly established before 2012, so the officer had fair notice that using non-trivial force in these circumstances would be objectively unreasonable. *See Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013) ("The right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established prior to 2008."). Applying a wrist lock and throwing someone to the ground cannot be deemed a trivial amount of force.

The officer attempted to justify his actions by claiming that he felt threatened by Donovan as she stood passively beside her car, palms up in a posture of inquiry. He testified that as he walked up to Donovan (who was herself a police officer for the State of California), she dropped one foot back into a "bladed

stance," which law enforcement officers are trained to adopt when preparing for a physical confrontation. But as the district court recognized, whether Donovan adopted such a stance is a disputed factual question that a rational jury could easily resolve against the officer, given the clarity of the videotape we have of the encounter. A jury could conclude from the videotape that Donovan did not adopt any stance—or do anything else—that could be interpreted as a sign of aggression or impending combat.

It is true that officers must be given latitude for having to make split-second judgments about how to react to rapidly unfolding events. *Graham*, 490 U.S. at 396–97. But on these facts, even after granting the officer such latitude, I think a rational jury could conclude that the force used against Donovan was objectively unreasonable.