**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 28 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MARIA ADAME, et al.,

Plaintiff-Appellees,

v.

JOSEPH GRUVER,

Defendant-Appellee,

and

CITY OF SURPRISE; et al.,

Defendants.

No.    19-16238

D.C. No.
2:17-cv-03200-GMS

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona
G. Murray Snow, Chief District Judge, Presiding

Argued and Submitted June 8, 2020
San Francisco, California

Before:  SCHROEDER and BRESS, Circuit Judges, and MCSHANE,[**] District
Judge.

Dissent by Judge SCHROEDER

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Michael J. McShane, United States District Judge for
the District of Oregon, sitting by designation.

Defendant-Appellee Joseph Gruver, a police officer of the Surprise Police Department, appeals the district court order denying his motion for summary judgment on a claim that he used excessive force in violation of the Fourth Amendment when he shot and killed Derek Adame. This Court has interlocutory jurisdiction of the district court's determination that Officer Gruver's actions violated clearly established law. *Cunningham v. City of Wenatchee*, 345 F.3d 802, 808 (9th Cir. 2003). Due to the unique circumstances present when Officer Gruver used lethal force, any violation of Adame's constitutional rights was not clearly established. Officer Gruver is therefore entitled to qualified immunity.

"We review the district court's conclusions regarding qualified immunity *de novo*." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017). "[W]e consider all disputed facts in the light most favorable to the nonmoving party[.]" *Id.* In determining whether an officer is entitled to qualified immunity, courts ask (1) whether the officer violated another's constitutional rights and, if so (2) whether the constitutional right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

The facts relevant to the qualified immunity analysis are not in dispute.[1] Around 1:00 a.m. on November 26, 2016, Officer Gruver responded to a report of

---

[1] The events were captured by body cameras worn by Officer Gruver and another officer.

a suspicious vehicle. He ran the license plate number and learned that it was stolen. After putting on his vehicle's bright "takedown" lights, Officer Gruver then approached the car and noticed Adame in the driver's seat of a Nissan Sentra "kinda leaning over to the side." Officer Gruver drew his firearm, opened the passenger door, announced himself as a police officer, and ordered Adame to show his hands and keep them visible on the steering wheel. Adame initially complied and, for approximately two minutes, Officer Gruver ordered Adame to stay where he was while he awaited backup. Officer Gruver kept his firearm drawn while he repeatedly ordered Adame to keep his hands on the steering wheel and not move.

As the backup officer arrived, Adame became noncompliant and moved his right hand down toward the key in the ignition and started the vehicle's engine. Officer Gruver immediately leaned into the vehicle, placing his left knee on the passenger seat as he reached with his left hand for Adame. After Officer Gruver entered the vehicle, and as both officers yelled for Adame to not move, Adame drove away with Officer Gruver situated partially inside and partially outside the vehicle. Gruver was positioned awkwardly, with his left hand reaching for Adame, his left knee kneeling on the passenger seat, and his right foot bouncing on the ground outside the vehicle.

Almost immediately after the car began to accelerate, Officer Gruver fired two shots, fatally injuring Adame. It is undisputed that at the time Officer Gruver

shot Adame, the vehicle was pulling out and beginning to accelerate, with Officer Gruver hanging partially outside the car. Shortly after the shots were fired, and with the car moving, Officer Gruver then fell out of the vehicle (the circumstances by which he did so are not clear). Several seconds later, the Nissan crashed into a parked truck a short distance away.

The district court compared these facts at issue with those in *Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014) (en banc), and determined that *Gonzalez* was "on all fours" and that Officer Gruver therefore violated Adame's clearly established right to be free from lethal force in these circumstances. *Gonzalez*, however, is not "on all fours" with the facts here. There, two officers stopped a minivan for a minor traffic violation. *Id.* at 792. After pulling over, the driver of the minivan refused the officers' commands to turn off the vehicle. *Id.* After an officer entered the minivan through the passenger side in an attempt to make the driver comply, the driver began to drive away. *Id.* Critical to its application to the facts here, in *Gonzalez* "[t]he front passenger door closed behind [the officer], who remained in the vehicle." *Id.* at 793. Viewed in the light most favorable to Gonzalez, the officer then shot Gonzalez in the head, with no warning, for failing to obey repeated commands to stop the vehicle that had been moving at an average speed of 3.4 miles per hour for 10 seconds. *Id.* at 793–94.

Unlike the officer in *Gonzalez*, Officer Gruver faced an immediate threat of serious bodily injury or worse based on his compromised position at the moment Adame pulled away. In *Gonzalez*, "Gonzalez's action could not have presented a threat sufficient to justify the use of deadly force unless it caused the car to move in a way that immediately threatened the safety of the officers or the public." *Id.* at 796. Because the officer in *Gonzalez* was securely in the vehicle when it began to pull away, the only danger to him came from the speed of the vehicle, which our court regarded as a disputed fact. *See id.* ("[T]he existence of an immediate threat to safety in this case is based on the sudden acceleration and speed of the van."). Here, in sharp contrast, Officer Gruver was partially inside and partially outside the vehicle when Adame pulled away. Regardless of the speed of the vehicle (the issue in *Gonzalez*), Officer Gruver thus faced a serious risk of bodily injury based on the possibility that he would fall out of the moving car and be run over by Adame's car. *Compare id.* (noting that in *Gonzalez*, there was no danger of anyone "being run over").

In addition, unlike the officer in *Gonzalez*, Officer Gruver did not have 10 seconds to ponder his course of action while sitting securely, albeit unwillingly, inside a slow-moving vehicle. Instead, immediately after Officer Gruver leaned into the vehicle, Adame began to drive away, with both officers yelling at him to stop and Officer Gruver hanging partially outside the vehicle with his right foot

5

bouncing awkwardly along the street. It was in this dangerous and rapidly evolving situation that Officer Gruver fatally shot Adame. Officer Gruver was thus faced with a "tense, uncertain, and rapidly evolving" situation where he had a "split-second" to decide upon an appropriate course of action. *Graham v. Connor*, 490 U.S. 386, 397 (1989).

Considering that Officer Gruver was partially outside of the vehicle at the time of the shooting, *Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010), is also instructive. There, the officer used lethal force while standing outside of a vehicle that was "moving at a slow rate of speed" but that could have run over the officer or his partner. *Id*. at 552. Although the vehicle's tires were spinning in mud, the court concluded that "because of the slippage, it could have gained traction at any time, resulting in a sudden acceleration in speed." *Id*. The court held that the facts there justified the use of lethal force because there was a reasonable threat of substantial bodily harm. *Id.* at 552–53.

Although the district court here correctly concluded that *Gonzalez* depended almost entirely on whether the vehicle there was rapidly accelerating, it erred in not heeding the explicit reminder in *Gonzalez* that courts must recognize "the importance of considering all the facts in excessive force cases." *Gonzalez*, 747 F.3d at 796 (citing *Wilkinson*, 610 F.3d at 551). The *Gonzalez* court distinguished *Wilkinson* because in *Gonzalez*, the officer "was not on foot next to a vehicle that

might run him over at any moment should it have accelerated," and the defendants in *Gonzalez* "presented no evidence of anyone else in danger." *Id.* The fact that Officer Gruver faced harm because he was partially outside an accelerating vehicle is a crucial fact that distinguishes this case from *Gonzalez.*

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Isayeva*, 872 F.3d at 946 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)). Neither *Gonzalez* nor *Wilkinson* "squarely governs" the unusual predicament faced by Officer Gruver. *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (noting "police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue") (quoting *Mullenix*, 136 S. Ct. at 309).

Given the unusual circumstances Officer Gruver faced, his split-second decision to shoot Adame, even if it violated Adame's constitutional rights, still entitles him to qualified immunity. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) ("Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted."). As Officer Gruver's decision to use lethal force was, at most, a reasonable misapprehension of *Gonzalez*, he is entitled to qualified immunity. *Id.*

**REVERSED AND REMANDED**.

*Adame v. Gruver*, No. 19-16238

Schroeder, Circuit Judge, dissenting:

The district court got this right. There was no danger. Decedent Derek Adame had been asleep in a parked compact Nissan Sentra when Officer Gruver approached, gun drawn, telling Adame to keep his hands up. Adame, who was unarmed, initially complied, but then reached with one hand towards the starter and started the car. Gruver then put one leg inside the small car, and at the moment the car began to move, Gruver shot Adame in the head without warning, killing him instantly. The weight of Adame's falling body caused the car to accelerate and run into a truck parked on the street.

The district court followed our decision with facts closest to this one. *Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014) (en banc). There, the officer was in the car when the suspect started the engine and began to drive. *Id.* at 792. There was a material conflict in the evidence as to whether the car began to move fast. *Id.* at 796–97. We held that if the car had gained speed quickly, the officer was in danger and the shooting justified. If the car was moving slowly, the killing was not justified. *See id.* at 797. In this case the car was barely moving, if at all. Officer Gruver was not yet in the car.

If there is one principle that is clearly established in this circuit it is that

deadly force is justified only by an imminent threat of serious harm. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). Here, when the officer shot, there was none. The car had just started to slowly move, and the door was open for Officer Gruver to step out.

Officer Gruver had witnessed no dangerous conduct on the part of Adame, which distinguishes this case from *Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010). In *Wilkinson*, we held that use of lethal force was reasonable. There, following a high speed chase, the decedent attempted to accelerate towards an officer, and the only reason he was unable to do so was because his wheels were stuck in mud. *Id.* at 552. At the time the officer shot the decedent, the officer believed another officer had already been run over by the decedent's vehicle. *Id.* at 549.

This case was briefed to us on the theory that Officer Gruver was in immediate danger because he had one leg in the car when the engine started and was left "dangling" as the vehicle began to move. That might have been the case had the vehicle in question been a semi-trailer truck. But this was a Nissan Sentra. The majority seemingly ignores this fact. "Dangling" is an impossibility when the car sits only a foot or so off the ground.

The district court therefore was correct when it denied Officer Gruver qualified immunity, because the situation created no imminent danger to the officer

or to anyone else.  The majority seems to have a different situation in mind and I therefore must respectfully dissent.