**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ERIN LERETTE, et al., | No. 23-3175 |
| Plaintiffs-Appellants, | D.C. No.<br>1:20-cv-00202-JAO-RT |
| v. | |
| COUNTY OF HAWAI'I, et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Hawaii
Jill A. Otake, District Judge, Presiding

Argued and Submitted October 9, 2024
Honolulu, Hawaii

Before: MURGUIA, Chief Judge, and GRABER and MENDOZA, Circuit Judges.

Vincent Burton died seventeen days after an encounter with police officers pursuant to a DUI arrest. His surviving sister and sons ("Plaintiffs") appeal the district court's dismissal of their excessive force claim against the officers. The district court ruled on summary judgment that the officers did not violate the

---

*     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Constitution and, in the alternative, that they are shielded by qualified immunity. We have jurisdiction under 28 U.S.C. § 1291, and we affirm on the second prong of qualified immunity alone ("clearly established law").[1]

1.      "We review a district court's grant of summary judgment de novo." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014) (en banc). In an excessive force case where the only witness, other than the officers involved, is dead, "we carefully examine 'all the evidence in the record, such as medical reports, contemporaneous statements by the officer and the available physical evidence, . . . to determine whether the officer's story is internally consistent and consistent with other known facts.'" *Id.* at 795 (ellipsis in original) (quoting *Scott v. Heinrich*, 39 F.3d 912, 915 (9th Cir. 1994)).

The only accounts in the record of the event in question are from the deposition testimony and declarations of police officers. The officers' account of what occurred is simple: when an officer opened the door of his service vehicle, Burton "popped" out of the vehicle with his hands handcuffed in front of him,[2] shoved the officer, and attempted to flee. The officer grabbed Burton, bear-hugged him, and brought him to the ground. They fell, the officer climbed on top of Burton,

---

[1] The district court also dismissed Plaintiffs' state law claims, which Plaintiffs do not address in their appellate briefing and therefore waive.

[2] Plaintiffs argue that the notion that Burton moved his hand to his front after the officers handcuffed his hands behind him is an "implausible fiction." But Plaintiffs offer no reason to doubt the officers' account other than speculation.

and Burton acquiesced. After four nights in custody where Burton obtained daily medical attention for scrapes, he was released on May 8, 2018.

Three days later, on May 11, 2018, Burton sought admission to the Hilo Medical Center ("HMC") due to pain in his ribs, vomiting blood, inability to urinate, and other symptoms. Upon admission, doctors determined that Burton had rib fractures and that he was in sepsis. Although Burton told HMC medical providers that he had been "beaten" by the officers, this statement is too vague and contradicted by the overall record to genuinely discredit the officers' accounts. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). Burton died on May 20, 2018 "as a result of sepsis and multiorgan failure, secondary to subacute rib fractures sustained during an altercation with police," according to an autopsy report.

2. "Qualified immunity protects government officials from liability under § 1983 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Cuevas v. City of Tulare*, 107 F.4th 894, 898 (9th Cir. 2024) (quoting *Waid v. County of Lyon*, 87 F.4th 383, 387 (9th Cir. 2023)). "Either prong can be adjudicated on appeal by taking the facts as most favorable to the plaintiffs and applying the pertinent legal standards to those facts." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 945 (9th Cir. 2017). "[A] negative answer at either step would entitle defendants to qualified immunity." *Sabbe v. Washington Cnty. Bd. of Commissioners*, 84 F.4th 807, 819 (9th

Cir. 2023). "A government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Cuevas*, 107 F.4th at 898. (brackets, citations, and internal quotation marks omitted).

Here, the officers were confronted with a suspect who was attempting to escape custody and who had tried to flee twice before the officers took him into custody. Plaintiffs urge that the officers used "deadly force" and tailor their proffer of clearly established law to that characterization of events. We disagree that the degree of force at issue here should be characterized as deadly force.

Neither the Supreme Court nor we have ever held that a police officer violates the Fourth Amendment by restraining an arrestee in similar circumstances with a similar use of force (grabbing, a bear hug, or tripping to bring a fleeing arrestee to the ground). The cases that Plaintiffs offer in support are out-of-jurisdiction, involve uses of force far more severe, or involve uses of force against compliant suspects. *See, e.g.*, *Bryan v. MacPherson*, 630 F.3d 805, 826–28 (9th Cir. 2010) (use of a taser on a suspect who was not a threat and did not attempt to flee); *Deorle v. Rutherford*, 272 F.3d 1272, 1279–80 (9th Cir. 2001), *as amended*, (Nov. 19, 2001) (use of "lead-filled 'less-lethal' round" from thirty feet on a suspect not attempting to flee); *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). Plaintiffs' citation to generalized cases

4

such as *Graham v. Connor*, 490 U.S. 386, 394 (1989), and *Tennessee v. Garner*, 471 U.S. 1, 7 (1985), is unavailing, because the Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) (quoting *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015)). Though our analysis discussed factors relevant to whether Officer Watkins' use of force was reasonable, we reach no conclusion on that issue and rest our holding on the second prong of qualified immunity alone. *See Isayeva*, 872 F.3d at 953 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

**AFFIRMED.**