Filed 3/23/26

## CERTIFIED FOR PUBLICATION

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF FRESNO,<br><br>　　　　Petitioner,<br><br>　　　　　　v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>　　　　Respondent;<br><br>AMERICAN CIVIL LIBERTIES UNION OF SOUTHERN CALIFORNIA,<br><br>　　　　Real Party in Interest. | F089987<br><br>(Super. Ct. No. 24CECG01635)<br><br><br>**OPINION** |

ORIGINAL PROCEEDINGS; Petition for Writ of Mandate.  W. Kent Hamlin, Judge.  (Retired Judge of the Fresno Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Lewis Brisbois Bisgaard & Smith, Tony M. Sain and Abigail J.R. McLaughlin for Petitioner.

No appearance for Respondent.

American Civil Liberties Union Foundation of Northern California, Nicolas Hidalgo and Angelica Salceda; American Civil Liberties Union Foundation of Southern California and Stephanie Padilla for Real Party in Interest.

-ooOoo-

## **INTRODUCTION**

Petitioner City of Fresno (City) filed this petition for writ of mandate, seeking relief from a superior court order requiring City to disclose to real party in interest the American Civil Liberties Union of Southern California (ACLU) specified records pursuant to the California Public Records Act (CPRA) (Gov. Code, § 7920.000 et. seq.) and subdivision (b)(1)(A)(ii) of Penal Code[1] section 832.7.  The records at issue here concern incidents involving the use of police canines or "K-9's."

The CPRA governs the public's right of access to public records held by state and local agencies.  Until recently, law enforcement investigatory records were categorically exempted from the CPRA's disclosure requirements.  Now, however, subdivision (b)(1) of section 832.7 contains an exception to this categorical exemption and renders certain law enforcement investigatory records subject to disclosure under the CPRA.  As relevant here, such records now are subject to disclosure if they relate to the report, investigation, or findings of "[a]n incident involving the use of force against a person by a peace officer or custodial officer that resulted in death or in *great bodily injury*."  (§ 832.7, subd. (b)(1)(A)(ii), italics added.)

The meaning of the term "great bodily injury" is the central dispute in this case. ACLU contends, and the superior court held, that "great bodily injury" as used in section 832.7 should be construed to have the same meaning as "great bodily injury" as defined in subdivision (f)(1) section 12022.7:  "a significant or substantial physical injury."  City contends "great bodily injury" as used in section 832.7 should be construed more narrowly to have the same meaning as "serious bodily injury" as defined in subdivision (d)(4) of Government Code section 12525.2:  "a bodily injury that involves a substantial

---

[1] Undesignated statutory references are to the Penal Code.

2.

risk of death, unconsciousness, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member or organ."

We hold that the plain language of the statute is clear, and the term "great bodily injury" in section 832.7 should be construed consistently with section 12022.7. Because the superior court's order requiring City to disclose records to ACLU is consistent with our holding, we deny the petition for writ of mandate.

## **BACKGROUND**

On March 27, 2023, ACLU submitted a CPRA request to City seeking public records regarding the City of Fresno Police Department's use of police K-9's. Relevant here, the request sought the following types of records, from January 1, 2019, to the date of the request: (1) any completed use-of-force forms or use-of-force reports concerning use of a K-9; (2) use-of-force reports documenting K-9 bites and/or injuries; (3) records, including reports, concerning accidental K-9 bites and/or injuries; and (4) all records relating to the report, investigation, or findings of a K-9 incident involving use of force resulting in death or great bodily injury, unreasonable or excessive force, failure to intervene against another officer using unreasonable or excessive force, dishonesty, or discriminatory use or threat of K-9 force.

On April 7, 2023, City provided an initial response to ACLU's request, stating that City needed additional time to respond. (Gov. Code, § 7922.535, subds. (b), (c)(4).)

On June 2, 2023, City provided a substantive response to ACLU's request. City disclosed records that were responsive to some of the items requested. However, City stated it was still reviewing records that were responsive to the specific requests at issue in this case to determine the applicability of any exemptions. City stated it would provide a supplemental response by June 30, 2023.

On June 30, 2023, City provided a supplemental response and additional disclosure, listing its response to each item in ACLU's request. City produced responsive

3.

records but also stated that some records were redacted or withheld based on exemptions under the federal and state Constitutions, Government Code, Penal Code, Evidence Code, and case law. The disclosure was comprised of over 900 pages of police records, including many records with redactions. City withheld, redacted, or otherwise did not disclose use-of-force records that did not result in great bodily injury, as defined by City to mean serious bodily injury.

On November 17, 2023, ACLU sent correspondence to City alleging that City improperly withheld and/or redacted records in response to ACLU's request.

On December 12, 2023, City responded, stating City stood by its response that the redacted or withheld documents were exempt or not disclosable and not subject to any exception to nondisclosure because the types of punctures, lacerations and contusions caused by K-9's did not constitute serious bodily injury.

On April 22, 2024, ACLU filed in the Fresno Superior Court a verified petition for writ of mandate and complaint for injunctive and declaratory relief. Therein, ACLU alleged City had disregarded its legal obligations to disclose public records by withholding responsive records and redacting information from responsive records that were disclosed. ACLU asserted City could not demonstrate that the redacted and withheld records are exempt from disclosure under the CPRA or any other authority and that, on the facts of this case, the public interest served by nondisclosure of the records was outweighed by the public interest served by disclosure. ACLU requested the court issue (1) a peremptory writ of mandate directing City to immediately disclose all nonexempt and requested public records, or parts thereof, in its possession; (2) an injunction requiring City to produce all disclosable records and to reproduce records without improper redactions, forthwith; and (3) a declaration that City's conduct violates the CPRA by failing to timely disclose all nonexempt, requested public records in its possession, and in improperly redacting information from records that were produced.

ACLU also sought reasonable attorney's fees, costs, and such other and further relief as the court deemed just and proper.

On June 3, 2024, City filed its answer to ACLU's verified petition.

On July 15, 2024, ACLU filed a motion for judgment on the petition, arguing City was required to disclose all records responsive to the CPRA request because the records were not exempt from disclosure under federal or state law and did not fall under CPRA's "catch-all" exemption because public interest weighed heavily in favor of disclosure. (See Gov. Code, § 7922.000 [permitting agencies to withhold records by demonstrating that, "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record"].)

On September 5, 2024, City filed its opposition to the motion for judgment, arguing the records were subject to the investigatory records exemption set forth in subdivision (a) of Government Code section 7923.600, and subdivision (b) of Government Code section 7923.605, and were not subject to the exception set forth in subdivision (b)(1)(A)(ii) of section 832.7 because they did not involve a use of force that resulted in death or great bodily injury. City asserted that, in the context of section 832.7, great bodily injury includes only serious, life-threatening, and potentially permanent, disabling injuries.

On September 11, 2024, ACLU filed its reply, arguing the records were not investigatory records and therefore not subject to the investigatory records exemption. Alternatively, if the records were investigatory records, ACLU argued City was required to disclose them because they contained factual circumstances surrounding an arrest (Gov. Code, § 7923.610) or involved the infliction of great bodily injury (§ 832.7, subd. (b)(1)(A)(ii)). ACLU asserted that great bodily injury as used in subdivision (b)(1)(A)(ii) of section 832.7 should be construed consistently with section 12022.7, and that K-9 uses of force frequently cause great bodily injury under that standard.

5.

On January 8, 2025, the parties appeared for hearing on ACLU's motion for judgment. Argument was presented and the court requested the parties file supplemental briefing.

On March 7, 2025, the parties filed timely supplemental briefs. ACLU argued (1) the responsive records were administrative, rather than investigatory, and therefore not subject to the investigatory records exemption; (2) City could not claim exemption for entire categories of records without an individualized inquiry into whether each record was investigatory and/or describes an incident involving great bodily injury; (3) City's blanket redactions were improper; and (4) because K-9 uses of force often cause great bodily injury as defined in section 12022.7 and related case law, City was required to assess each record to determine if it described great bodily injury and, if so, to disclose that record.

City argued (1) police use-of-force reports, including K-9 reports and accidental bite reports, are law enforcement investigatory records because the incidents occur as part of police investigations; (2) there is no exception to the investigatory records exemption that applies to ACLU's CPRA request, and the exemption has no end date; (3) the legislative history of Senate Bill No. 1421 (2017–2018 Reg. Sess.) (Senate Bill No. 1421) demonstrates that great bodily injury is to be narrowly construed to mean serious injuries only, which does not include the kinds of punctures, lacerations and bruises typically associated with dog bites; and (4) the requested records therefore remained exempt from disclosure under the CPRA. City also asserted that, in withholding certain police records, it had conducted a particularized review to determine whether any specific records of incidents involving a K-9 use of force had resulted in death or great bodily injury, as that term was defined by City.

The matter was heard and argued on March 21, 2025, and the court took the matter under submission.

6.

On May 19, 2025, the court issued a judgment granting the peremptory writ of mandate and statement of decision. The court stated, "[I]t is clear that the parties' disagreement centers on whether the requested records are investigatory reports exempt from disclosure by Government Code section 7923.600 and, if so, whether some or all of those records are nevertheless required to be produced pursuant to Penal Code Section 832.7, subdivision (b)." The court did not expressly consider whether the requested records constituted investigatory records and instead proceeded directly to the applicability of section 832.7, subdivision (b).

The court determined that the language of section 832.7, subdivision (b) is unambiguous, inasmuch as " '[g]reat bodily injury' has a well-accepted meaning in the law – a significant or substantial physical injury." Concluding the Legislature's intent in using that term was clear, the court held the plain language of the statute controls. The court further noted that it had taken judicial notice of the Legislative history behind section 832.7, subdivision (b), at City's request. However, the "fair inference" from that history was that the Legislature purposefully substituted the words " 'great bodily injury' " in place of the words " 'serious bodily injury' " with the "intent to expand the exemption and increase the public's right of access." The court rejected City's reliance on subsequent legislative history relating to a separate bill seeking to amend section 832.7, subdivision (b)(1)(A)(ii). The court also declined to rely on City's "dissatisfaction with the term 'great bodily injury' " and its view that this term would encompass "nearly every dog bite," noting that these concerns were for the Legislature to resolve.

Ultimately, the court held City "has a duty to produce every responsive record that evidences a canine deployment that caused great bodily injury, as defined in Penal Code Section 12022.7[, subdivision ](f) and reported court cases interpreting the term, as well as records reflecting a sustained finding involving a complaint that alleges unreasonable or excessive force by means of a canine deployment." Accordingly, the court issued a peremptory writ of mandate directing City to provide to ACLU specified records in

7.

incidents where great bodily injury was inflicted. The court granted ACLU's request for costs but denied ACLU's request for attorney's fees.[2]

## DISCUSSION

### I. Overview of the CPRA

"[A]ccess to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (Gov. Code, § 7921.000; accord, *Becerra v. Superior Court* (2020) 44 Cal.App.5th 897, 913 (*Becerra*).) To effectuate this right of access, "the CPRA grants public access to public records held by state and local agencies." (*Becerra*, at p. 913; see Gov. Code, § 7920.000 et seq.) "Nevertheless, the [CPRA] does not confer an absolute right of access." (*Becerra*, at p. 913; see Gov. Code, § 7922.000.) Rather, the CPRA contains "a number of exemptions that permit government agencies to refuse to disclose certain public records." (*Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1282 (*Copley Press*); see Gov. Code, § 7922.000.)

Until recently, law enforcement investigatory files were "categorically exempted from the CPRA's general requirement of disclosure." (*Becerra, supra,* 44 Cal.App.5th at p. 914; see Gov. Code, §§ 7923.600–7923.630.) Although the CPRA still contains broad exemptions for law enforcement investigatory files (Gov. Code, §§ 7923.600–7923.630), those exemptions are now subject to the exceptions set forth in section 832.7.

Section 832.7 is one of several statutes sometimes collectively referred to as the "*Pitchess* statutes."[3] (*City of Vallejo, supra,* 112 Cal.App.5th at p. 581; accord,

---

[2] The issue of the court's denial of attorney's fees is pending on appeal in *American Civil Liberties Union of Southern California v. City of Fresno*, F090114. Accordingly, we do not address this issue further.

[3] "The Supreme Court's 1974 decision in [*Pitchess v. Superior Court* (1974) 11 Cal.3d 531] ' "recognized that a criminal defendant may, in some circumstances, compel the discovery of evidence in the arresting law enforcement officer's personnel file that is relevant to the defendant's ability to defend against a criminal charge." ' [Citation.] [¶]

*Association for Los Angeles Deputy Sheriffs v. Superior Court* (2019) 8 Cal.5th 28, 36 (*Los Angeles Deputy Sheriffs*).) "Historically, the so-called *Pitchess* statutes were considered an exemption to disclosure under the CPRA." (*Becerra*, *supra*, 44 Cal.App.5th at p. 914.) As such, section 832.7 describes three categories of confidential documents: (1) personnel records of peace officers and custodial officers, (2) records maintained by state or local agencies relating to the investigation of complaints by members of the public against department or agency personnel, and (3) information obtained from the aforementioned records. (§ 832.7, subd. (a); *Los Angeles Deputy Sheriffs*, at pp. 44–45.) Until recently, the records and information described in section 832.7 were considered "confidential and nondisclosable in any criminal or civil proceeding except pursuant to discovery under certain provisions of the Evidence Code." (*Becerra*, at p. 915; see § 832.7, former subd. (a), as amended by Stats. 2003, ch. 102, § 1.) However, effective January 1, 2019, Senate Bill No. 1421 amended section 832.7 to render certain of these records and information nonconfidential and subject to disclosure under the CPRA. (*City of Vallejo*, *supra*, 112 Cal.App.5th at p. 586.) As amended, section 832.7, subdivision (b)(1) now provides, in relevant part:

> "Notwithstanding subdivision (a), Section 7923.600 of the Government Code, or any other law, the following peace officer or custodial officer personnel records and records maintained by a state or local agency shall not be confidential and shall be made available for public inspection pursuant to the [CPRA] (Division 10 (commencing with Section 7920.000) of Title 1 of the Government Code):

> "(A) A record relating to the report, investigation, or findings of any of the following:

---

' "In 1978, the Legislature codified the right" and defined "which officer records are subject to *Pitchess* discovery." [Citation.] "The statutory scheme is set forth in Evidence Code sections 1043 through 1047 and Penal Code sections 832.5, 832.7, and 832.8." [Citation.] These *Pitchess* statutes "reflect[] the Legislature's attempt to balance a litigant's discovery interest with an officer's confidentiality interest." ' " (*City of Vallejo v. Superior Court* (2025) 112 Cal.App.5th 565, 585 (*City of Vallejo*).)

"(i) An incident involving the discharge of a firearm at a person by a peace officer or custodial officer.

"(ii) *An incident involving the use of force against a person by a peace officer or custodial officer that resulted in death or in great bodily injury.*

"(iii) A sustained finding involving a complaint that alleges unreasonable or excessive force.

"(iv) A sustained finding that an officer failed to intervene against another officer using force that is clearly unreasonable or excessive." (Italics added.)

The parties do not cite, and we do not find, any published case law interpreting the term "great bodily injury" in the context of section 832.7, subdivision (b)(1)(A)(ii).[4]

## II. Principles of Statutory Interpretation

The meaning of the term "great bodily injury" as used in section 832.7, subdivision (b)(1)(A)(ii) is a question of statutory interpretation that we review de novo. (*Brown v. City of Inglewood* (2025) 18 Cal.5th 33, 40.)

" 'When interpreting any statute, our goal is to determine the Legislature's intent and give effect to the statute's purpose.' " (*Iloff v. LaPaille* (2025) 18 Cal.5th 551, 560.) " 'We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language "in isolation." . . . [W]e construe the words in question " 'in context, keeping in mind the nature and

---

[4] The parties have directed us to three trial court decisions addressing this issue. (*Howey v. City of Fresno* (Super. Ct. Fresno County, 2023, No. 23CECG01468); *Richmond Police Officers' Association v. City of Richmond* (Super. Ct. Contra Costa County, 2020, No. MSN19-0169); *The Sacramento Bee v. Sacramento County Sheriff's Department* (Super. Ct. Sacramento County, 2019, No. 34-2019-80003062).) These cases are not citable for their precedential or persuasive value. (Cal. Rules of Court, rule 8.1115(a)–(b).) Nonetheless, on our motion, we take judicial notice of the cited cases to address the parties' arguments. *Richmond Police Officers' Association v. City of Richmond*, *supra*, MSN19-0169 and *The Sacramento Bee v. Sacramento County Sheriff's Department*, *supra*, 34-2019-80003062 are consistent with our holding. We discuss *Howey v. City of Fresno*, *supra*, 23CECG01468, *post*.

obvious purpose of the statute . . . .' " ' [Citation.] We also 'construe every statute with reference to the whole system of law of which it is a part, so that all may be harmonized and anomalies avoided.' [Citations.] 'This rule applies although the statutes to be harmonized appear in different codes.' " (*Hohenshelt v. Superior Court* (2025) 18 Cal.5th 310, 330–331.) " ' "[T]he statute's plain meaning controls the court's interpretation unless its words are ambiguous." ' " (*People v. Rhodius* (2025) 17 Cal.5th 1050, 1057.) " 'If the statutory language is unclear, we may look to legislative history and public policy as aids in determining how best to give effect to Legislative intent.' " (*Iloff v. LaPaille*, at pp. 560–561.)

" '[J]udicial decisions interpreting the [CPRA] seek to balance the public right to access to information, the government's need, or lack of need, to preserve confidentiality, and the individual's right to privacy.' " (*Copley Press*, *supra*, 39 Cal.4th at p. 1282.) "Pursuant to the California Constitution, the CPRA must be 'broadly construed' because its statutory scheme 'furthers the people's right of access.' (Cal. Const., art. I, § 3, subd. (b)(2).)" (*Becerra*, *supra*, 44 Cal.App.5th at p. 913.) However, "CPRA exemptions are narrowly construed [citation], and the agency opposing disclosure bears the burden of proving an exemption applies." (*Id.* at p. 914.)

### III.    The Plain Language of the Statute Controls

We are tasked with construing the term "great bodily injury" contained in section 832.7, subdivision (b)(1)(A)(ii). As stated, City contends "great bodily injury" should be construed consistently with "serious bodily injury" as defined in Government Code section 12525.2, subdivision (d)(4). ACLU contends City's construction is too narrow, and "great bodily injury" instead should be construed to mean "great bodily injury" as defined in section 12022.7, subdivision (f)(1).

11.

## A.    The Legislature's Choice of Terms Is Controlling

Both "great bodily injury" and "serious bodily injury" are long-standing and well-defined terms of art.  Section 12022.7 permits enhancement of a criminal defendant's sentence if the defendant inflicted great bodily injury on a person other than an accomplice.  (§ 12022.7, subds. (a)–(e).)  The statute defines "great bodily injury" as "a significant or substantial physical injury."  (§ 12022.7, subd. (f)(1); accord, §§ 198.5, 16600.)  Meanwhile, relevant here, Government Code section 12525.2 requires law enforcement agencies to provide to the Department of Justice reports regarding instances in which a peace officer is involved in "[a]n incident in which the use of force by a peace officer against a civilian results in serious bodily injury or death."  (Gov. Code, § 12525.2, subd. (a)(3).)  "Serious bodily injury" is defined as "a bodily injury that involves a substantial risk of death, unconsciousness, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member or organ."  (*Id*., subd. (d)(4).)

Here, in amending subdivision (b)(1)(A)(ii) of section 832.7 to render certain records subject to disclosure under the CPRA, the Legislature chose to use the term "great bodily injury," which has a well-established legal meaning set forth in section 12022.7, subdivision (f)(1) and cases interpreting that provision.  (See *Brown v. Superior Court* (2016) 63 Cal.4th 335, 350 [the Legislature's adoption of "terms of art with which it is quite familiar" is significant in construing those terms].)  "It is a venerable principle that when a word or phrase appearing in a statute 'has a well-established *legal* meaning, it will be given that meaning in construing the statute.  This has long been the law of California:  "The rule of construction of statutes is plain.  Where they make use of words and phrases of a well-known and definite sense in the law, they are to be received and expounded in the same sense in the statute." ' "  (*Id.* at p. 351.)  The Legislature could have, but did not, choose to use the term "serious bodily injury."  Because the Legislature chose to use a term with a familiar and well-established legal meaning, in lieu of a

12.

different term with its own familiar and well-established meaning, we must conclude the Legislature's choice of term most accurately reflects its intent. As such, the plain language of section 837.2, subdivision (b)(1)(A)(ii) is conclusive, and we "presume the Legislature meant what it said." (*People v. Snook* (1997) 16 Cal.4th 1210, 1215.) We therefore construe the term "great bodily injury" as used in subdivision (b)(1)(A)(ii) of section 832.7 to have the same meaning as provided in subdivision (f)(1) of section 12022.7.

## B.    City's Arguments Regarding the Plain Language

Nonetheless, City urges us to disregard the Penal Code definition of "great bodily injury" and to instead rely on dictionary definitions of the term, which City views as more akin to the statutory definition of "serious bodily injury." While City is correct that we may rely on general dictionaries to discern a term's ordinary meaning, we do not do so when the Legislature employs a term with an accepted and well-established legal meaning. Rather, "when the Legislature uses a term of art, a court construing that use must assume that the Legislature was aware of the ramifications of its choice of language." (*Creutz v. Superior Court* (1996) 49 Cal.App.4th 822, 829.) Accordingly, we will not eschew the statutory definition set forth in section 12022.7 in favor of a definition contained in a general dictionary.

City also complains that our reliance on section 12022.7 is inappropriate because that statute is not contained in the CPRA and does not relate to police uses of force. We acknowledge that, when harmonizing all parts of a statutory scheme, we do not necessarily consider statutes unrelated to the act or subject matter at issue. However, neither can we ignore the Legislature's deliberate use of a statutorily defined term.

Still, City suggests the definition of serious bodily injury in Government Code section 12525.2 is more apt because, like the CPRA, this section is located within the Government Code. However, Government Code section 12525.2 is not contained within the CPRA, does not relate to the disclosure of records to the public, and is set forth in an

13.

unrelated part of the code pertaining to law enforcement's reporting obligations to the Office of the Attorney General. Meanwhile, both section 832.7 and section 12022.7 are located within the Penal Code. There are few relevant inferences to be drawn from the locations of these statutes, but those inferences suggest the definition of great bodily injury contained in section 12022.7 is more apt than the definition of serious bodily injury contained in Government Code section 12525.2.

Likewise, the fact that Government Code section 12525.2 relates to reporting requirements regarding certain police uses of force does not convince us the Legislature intended to import the meaning of the term "serious bodily injury" into its use of the term "great bodily injury" in section 832.7. Nor does anything in section 832.7 suggest the Legislature intended to limit the public's right of access to information regarding police uses of force to the types of incidents law enforcement agencies are required to report to the Office of the Attorney General. To the contrary, the categories of incidents rendered disclosable by subdivision (b)(1)(A) of section 837.2 are significantly broader than those rendered reportable by Government Code section 12525.2. (Compare § 832.7, subd. (b)(1) [rendering disclosable records relating to the discharge of an officer's firearm at a person; a use of force that results in death or great bodily injury; a sustained finding of unreasonable or excessive force or that an officer failed to intervene in another officer's use of unreasonable or excessive force; a sustained finding that an officer engaged in sexual assault, certain types of dishonesty or discrimination, or made an unlawful arrest or conducted an unlawful search; or records relating to certain prohibited agreements regarding misconduct investigations], with Gov. Code, § 12525.2, subd. (a) [rendering reportable incidents involving the shooting of a civilian by a peace officer or a peace officer by a civilian; and incidents involving use of force by an officer or a civilian that result in serious bodily injury or death].)

## C.     City's Arguments Based on Case Law

City also resorts to case law to support its argument that, under the plain statutory language, the term "great bodily injury" in section 832.7 cannot mean "great bodily injury," but instead must mean "serious bodily injury."  We address and reject these various arguments in turn.

### i.     Judicial Construction of a Term Does Not Render It Ambiguous

City contends that a term requiring judicial construction negates a plain reading of the statutory text and renders the term unclear and ambiguous.  Thus, City contends, the term "great bodily injury" as used in section 832.7 cannot clearly and unambiguously be defined by reference to section 12022.7 because the meaning of "great bodily injury" under section 12022.7 has been refined through case law.[5]

It is true that the definition of great bodily injury under subdivision (f)(1) of section 12022.7 has been refined through case law.  We acknowledge the definition of "great bodily injury" in section 12022.7 does not establish a bright line rule.[6]  Resolution

---

[5] City also points out that section 12022.7 has been interpreted to require an injury beyond that which is inherent in the underlying offense.  (*People v. Escobar* (1992) 3 Cal.4th 740, 746–747 (*Escobar*); *People v. Le* (2006) 137 Cal.App.4th 54, 59.)  City suggests the definition of great bodily injury therefore cannot be applied to CPRA requests, which do not necessarily involve criminal charges and therefore cannot involve injuries beyond those inherent in a nonexistent charge.  However, the requirement of an injury beyond that inherent in the underlying offense stems from section 12022.7's function as a sentencing enhancement providing an additional term of imprisonment based on factors relating to the crime that are not present for all such crimes, and therefore justify the higher penalty.  (*People v. Modiri* (2006) 39 Cal.4th 481, 492; *People v. Jefferson* (1999) 21 Cal.4th 86, 101.)  This limitation does not otherwise affect the definition of great bodily injury as a "significant or substantial physical injury." (§ 12022.7, subd. (f)(1).)

[6] The same can be said of serious bodily injury determinations under Government Code section 12525.2, subdivision (d)(4), which necessarily involve factual questions regarding, for example, whether the risk of death from an injury is substantial, or whether the disfigurement resulting from an injury is sufficiently protracted or obvious.  (*Ibid.*)  A

15.

of whether a specific injury qualifies as great bodily injury is a factual question. (*In re Cabrera* (2023) 14 Cal.5th 476, 485 (*Cabrera*); accord, *Escobar*, *supra*, 3 Cal.4th at p. 750.) Great bodily injury determinations will necessarily turn on the facts of each individual case, particularly in close cases. (*Escobar*, at p. 752 [" 'A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description. Clearly, it is the trier of fact that must in most situations make the determination.' "].) As such, numerous published decisions have applied the definition of great bodily injury to specific facts when considering whether a jury's great bodily injury finding is supported by substantial evidence. (E.g., *id*. at p. 750 [extensive bruises and abrasions, along with other injuries severe enough to significantly impair the ability to walk, were sufficient to support the jury's finding]; *People v. Medellin* (2020) 45 Cal.App.5th 519, 529 [injuries that required stitches and caused scarring, swelling and pain were sufficient to support the jury's finding]; *People v. Saez* (2015) 237 Cal.App.4th 1177, 1189 [head injuries involving considerable bleeding, fractures and lacerations, and requiring a hospital stay, were sufficient to support the jury's finding]; *People v. Le*, *supra*, 137 Cal.App.4th at p. 59 [gunshot wound to the leg that resulted in pain and difficulty walking, standing, and sitting was sufficient to support the jury's finding]; *People v. Martinez* (1985) 171 Cal.App.3d 727, 735–736 [a " 'minor laceration' " or " 'pinprick' " knife wound through several layers of clothing, which did not require hospitalization, was insufficient to support the jury's finding].)

Here, we are not called upon to apply the definition of great bodily injury set forth in section 12022.7, or to determine whether any particular document or incident involves great bodily injury.[7] Rather, we are called upon to determine whether "great bodily

---

request for records under either definition would require City to make factual determinations regarding the degree of injury involved.

[7] Nothing before us suggests City is incapable of making these types of factual determinations. Indeed, City appears to have already done so, inasmuch as City

injury" as used in section 832.7 means "great bodily injury" as defined in section 12022.7, or something else. On this point, there is no ambiguity. Any nuance in the definition of "great bodily injury" set forth in section 12022.7 or the associated case law is not before us.

### ii. Minor Injuries Are Not Great Bodily Injury Under Section 12022.7

City points out that "great bodily injury," as defined through case law interpreting section 12022.7, can include "less serious injuries like abrasions, bruises, punctures, physical pain." As such, City repeatedly asserts that construing great bodily injury in section 832.7 with reference to section 12022.7 will require disclosure of records relating to minor pain and temporary injuries. City asserts that "all uses of physical 'force' involve *some* physical pain," and thus disclosure will be required in all incidents in which any degree of force was used. This is, City contends, an absurd result. City's argument is without merit.

As stated, section 12022.7, subdivision (f)(1) succinctly defines great bodily injury as "a significant or substantial physical injury." Case law has explained that great bodily injury does not include a " ' "moderate" or "minor" ' " injury. (*Cabrera*, *supra*, 14 Cal.5th at p. 485; accord, *Escobar*, *supra*, 3 Cal.4th at p. 750.) Pain, lacerations, bruises or abrasions can constitute great bodily injury if the injuries are significant or substantial.[8] (E.g., *People v. Quinonez* (2020) 46 Cal.App.5th 457, 464; *People v.*

---

contended below that nearly every dog bite would qualify as great bodily injury within the meaning of section 12022.7, subdivision (f)(1). City's contention itself belies City's claim that section 12022.7's definition of great bodily injury is ambiguous.

[8] Because these types of injuries can constitute great bodily injury under section 12022.7, City asserts that *Howey v. City of Fresno*, *supra*, 23CECG01468 necessarily applied a different definition of great bodily injury. There, the court determined it was unnecessary to resolve the precise definition of the term "great bodily injury" under section 832.7, subdivision (b)(1)(A)(ii) because, even under the definition set forth in section 12022.7, subdivision (f), the injuries at issue—which included burns, abrasions, punctures, and lacerations from a Taser—did not constitute great bodily injury. The

17.

*Washington* (2012) 210 Cal.App.4th 1042, 1047.) On the other hand, even bone fractures do not constitute great bodily injury as a matter of law. (*People v. Quinonez*, at p. 464.) Likewise, even knife wounds may be too minor to constitute great bodily injury. (*People v. Martinez*, *supra*, 171 Cal.App.3d at pp. 735–736.) To be clear, whether an injury constitutes great bodily injury is necessarily a question of degree. However, as a matter of law, minor and inconsequential injuries do not constitute great bodily injury under either section 12022.7, subdivision (f)(1) or section 832.7, subdivision (b)(1)(A)(ii).

City is incorrect that every use of force that causes some pain will involve great bodily injury as a matter of law.

### iii.     City's Reliance on Police Use-of-force Cases

City asserts that, in the context of cases addressing police uses of force, the term "great bodily injury" is defined to "include *only* life-threatening and potentially permanent, disabling injuries."[9] City further asserts that, in such cases, the terms "great bodily injury" and "serious bodily injury" are used interchangeably, further emphasizing the severity of the injuries involved, i.e., injuries "*comparable* to death." We are not entirely convinced that cases evaluating whether an officer used unreasonable force in response to a threat from a citizen provide the appropriate frame of reference for determining whether a citizen's resulting injuries are severe enough to warrant disclosure under the CPRA, particularly considering the Legislature's deliberate use of a statutorily defined term of art to govern this inquiry. In any event, most of the cases relied on by City do not involve excessive force claims; the remaining cases likewise do not support City's argument.

court did not, as City suggests, hold these types of injuries *cannot* constitute great bodily injury as a matter of law. To the extent *Howey* construed "great bodily injury" to require a showing of "significant or substantial injury," it is consistent with our opinion. However, the *Howey* court's factual determinations regarding the degree of injury involved in that case are not before us.

[9] City does not cite to any case that defines "great bodily injury" in this manner.

We begin by putting City's argument in context. *Graham v. Connor* (1989) 490 U.S. 386 provides the framework that governs excessive force inquiries under federal law. (*Sabbe v. Washington County Bd. of Com'rs* (9th Cir. 2023) 84 F.4th 807, 821.) Under this framework, courts consider " 'the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted' " and " 'the government's interest in the use of force.' " (*Ibid.*) Deadly force is the "most severe intrusion on Fourth Amendment interests," and is defined as "any force that 'creates a substantial risk of causing death or serious bodily injury.' " (*Ibid.*, italics omitted.) The government's interest in the use of force will depend on several factors, including "whether the suspect posed an immediate threat to the safety of the officers or others." (*Id*. at p. 822.) The use of deadly force is reasonable only where "the suspect poses a significant threat of death or *serious physical injury* to the officer or others." (*Tennessee v. Garner* (1985) 471 U.S. 1, 3, italics added; see *id*. at p. 11; *Gonzalez v. City of Anaheim* (9th Cir. 2014) 747 F.3d 789, 793.) Similarly, under California law, an officer may use deadly force "[t]o defend against an imminent threat of death or *serious bodily injury* to the officer or to another person." (§ 835a, subd. (c)(1)(A), italics added.) Both the federal and state framework employ the term "serious bodily injury," not the term "great bodily injury."

City cites several California cases for the proposition that the terms "great bodily injury" and "serious bodily injury" are interchangeable in the police use-of-force context.[10] The primary case relied on by City for this proposition is *People v. Arnett*

---

[10] City also states that it presented the trial court with "a myriad of cases underscoring how the term ['great bodily injury'] is defined *in the context of police uses of force* . . . ." However, our review of this question of statutory interpretation is de novo (*Brown v. City of Inglewood*, *supra*, 18 Cal.5th at p. 40), and we do not comb the record in search of citations to support a party's case. It is City's obligation to support its arguments with citation to relevant authority. (Cal. Rules of Court, rule 8.204(a)(1)(B).) Regardless, it appears City has largely relied on the same cases in its petition.

(2006) 139 Cal.App.4th 1609.  However, *Arnett* is a criminal case involving convictions for assault with force likely to produce great bodily injury (§ 245, former subd. (a)(1)) and battery with serious bodily injury (§ 243, subd. (d)), with a prior serious felony enhancement based on the current offense involving great bodily injury (§§ 667, subd. (a)(1), 1192.7, subd. (c)).  (See *Arnett*, at pp. 1611, 1613–1614.)  Contrary to City's characterization, *Arnett* does not involve a police officer's use of force.  City has mischaracterized *Arnett* as a police use-of-force case no fewer than eight times throughout the course of this litigation:  three times in its petition, once in its informal reply, once again in its formal reply, and repeatedly in the trial court.[11]  This is not the only criminal case City mischaracterizes as a police use-of-force case.  (See *People v. Knoller* (2007) 41 Cal.4th 139, 143 & fn. 2 [addressing whether the mental state for implied malice murder can be satisfied by awareness that an act is likely to result in great bodily injury, noting the Court of Appeal had used the term "serious bodily injury," and deeming any differences in the terms immaterial to its analysis]; *People v. Morales* (2021) 69 Cal.App.5th 978, 994 [in a murder trial, addressing a claim of self-defense based on fear of death or great bodily injury].)  These cases do not support City's argument.

City also relies on *Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077, 1105–1106, disapproved on a related ground in *Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 639, footnote 1, for the proposition that case law allows officers to use deadly force to prevent great bodily injury.  *Munoz* was a civil action for negligence and battery based on a fatal shooting by a police officer.  (*Munoz*, at p. 1081.)  The only reference in *Munoz* to the term "great bodily injury" is a single passing reference in the court's discussion, and ultimate rejection of, a federal case cited by the appellant,

---

[11] City is reminded of its obligations under Business and Professions Code section 6068, subdivision (d), and rule 3.3(a)(1) and (a)(2) of the California Rules of Professional Conduct, outlining an attorney's duty of candor.

20.

*Reynolds v. County of San Diego* (9th Cir. 1996) 84 F.3d 1162, 1167, overruled on other grounds by *Acri v. Varian Associates, Inc.* (9th Cir. 1997) 109 F.3d 1375. (*Munoz*, at pp. 1105–1106.) *Munoz* does not stand for the proposition City urges.

City also asserts *Edson v. City of Anaheim* (1998) 63 Cal.App.4th 1269, 1272, approved a jury instruction "that officer deadly force is reasonable where the officer 'reasonably believed' a suspect 'posed an immediate threat of great bodily injury or death.' " *Edson* was a battery case involving a fatal shooting by a police officer. (*Id.* at p. 1271.) A jury instruction provided, in relevant part, " 'The defendant has the burden of proving by a preponderance of the evidence all of the facts necessary to establish that [the officer] reasonably believed that [the decedent] posed an immediate threat of great bodily injury or death.' " (*Id.* at p. 1272.) The court addressed whether the instruction properly placed the burden on the defendant. (*Id.* at pp. 1272–1274.) It did not otherwise address the elements of the tort. "[I]t is axiomatic that a decision does not stand for a proposition not considered by the court [citation]." (*People v. Barker* (2004) 34 Cal.4th 345, 354.)

City cites to *Acosta v. City and County of San Francisco* (9th Cir. 1996) 83 F.3d 1143, 1145, footnote 3, abrogated in related part by *Saucier v. Katz* (2001) 533 U.S. 194, for the proposition that an officer's use of "deadly force is lawful to protect against [great bodily injury]." It is true that *Acosta* uses the terms "great bodily injury," "great bodily harm," "serious bodily harm," and "serious physical injury" without distinction throughout the opinion. (*Id.* at pp. 1145 & fn. 3, 1146–1148 & fns. 8, 13.) We accept that, in the excessive force context, these terms sometimes may be employed without precision to describe the type of serious bodily injury that would reasonably warrant an officer's use of deadly force, particularly in federal cases.[12] Again, however, these cases

---

[12] Because some federal cases seemingly authorize the use of deadly force in response to a threat of great bodily injury, City suggests our holding will allow officers to utilize deadly force if threatened with pain, because pain constitutes great bodily injury under section 12022.7. This argument is not legally sound. The threshold for using deadly force is clearly established under United States Supreme Court precedent and

relate to a threatened injury upon an officer by a citizen.  The exception set forth in section 832.7, subdivision (b)(1)(A)(ii) relates to the actual injury suffered by a citizen upon the application of force by an officer.  Given this difference in context, we cannot justify resorting to a federal court's imprecise use of a generally defined term when our Legislature deliberately chose to use a statutorily defined term of art under state law with a wholly different meaning.

Accordingly, based on the foregoing, we conclude City's reliance on police use-of-force cases is unpersuasive.

### iv.  Criminal Cases Addressing Great Bodily Injury and Serious Bodily Injury

City contends that, in the state criminal law context, great bodily injury is a "higher level of injury" than serious bodily injury.  (Boldface & some capitalization omitted.)  Thus, City contends the Legislature's use of the term "great bodily injury" in section 832.7 reflects an intent to narrow the scope of disclosure.  This argument lacks merit.

In the context of criminal law, the terms "serious bodily injury" and "great bodily injury" have sometimes been used interchangeably.  Courts have held that " 'serious bodily injury,' as used in section 243, is ' "essentially equivalent" ' to ' "great bodily injury," ' as used, for example, in . . . section 12022.7 . . . ."  (*People v. Wade* (2012) 204 Cal.App.4th 1142, 1149 [collecting cases]; accord, *People v. Santana* (2013) 56 Cal.4th 999, 1008 ["We recognize that the terms 'serious bodily injury' and 'great bodily injury' have been described as ' " 'essential[ly] equivalent' " ' [citation] and as having 'substantially the same meaning' [citation]."].)  However, "the two terms are not equivalent as a matter of law."  (*Cabrera*, *supra*, 14 Cal.5th at p. 485.)  "[T]he terms in fact 'have separate and distinct statutory definitions.' "  (*Santana*, at p. 1008.)

---

California law.  (*Tennessee v. Garner*, *supra*, 471 U.S. at p. 3; § 835a, subd. (c)(1)(A).)  Nothing stated herein could alter that threshold.

22.

City relies on *Cabrera* to support its argument that great bodily injury requires a higher level of injury than serious bodily injury. There, the defendant was charged with an enhancement for inflicting great bodily injury within the meaning of section 12022.7, in addition to committing assault with force likely to produce great bodily injury and battery with serious bodily injury. (*Cabrera*, *supra*, 14 Cal.5th at pp. 480–481.) The jury was instructed that great bodily injury means " 'significant or substantial physical injury' and that it is 'an injury that is greater than minor or moderate harm.' " (*Id.* at p. 481.) It also was instructed that serious bodily injury means " 'a serious impairment of physical condition,' which 'may include but is no [*sic*] limited to loss of consciousness, concussion, bone fracture, protracted loss or impairment of function of any bodily member or organ, a wound requiring extensive suturing and serious disfigurement.' " (*Ibid.*)

Jury questions arose regarding the definitions of great bodily injury and serious bodily injury. The jury asked for " 'specific definitions of mild and moderate injury' as those terms were used in the instructions on great bodily injury," but was redirected back to the instructions given and informed there were no specific definitions. (*Cabrera*, *supra*, 14 Cal.5th at p. 481.) Two days later, the jury expressed difficulty with the differences between great bodily injury and serious bodily injury, and asked, " 'If we agree the injury was severe, are we bound to agree that great bodily injury occurred?' " (*Ibid*.) The court referred the jury back to the instructions and informed the jury that " 'serious bodily injury is not defined exactly the same as great bodily injury' but 'they are not necessarily mutually exclusive.' " (*Ibid.*)

Ultimately, the jury found the defendant guilty of assault by means of force likely to produce great bodily injury and battery causing serious bodily injury, but deadlocked on the great bodily injury enhancements. (*Cabrera*, *supra*, 14 Cal.5th at p. 482.) At sentencing, the prosecutor argued that the current convictions counted as serious felonies for purposes of a serious felony enhancement (§ 667, subd. (a)(1)) on the ground the

23.

defendant had inflicted great bodily injury. The prosecutor relied in part on the jury's serious bodily injury finding to assert the defendant had committed great bodily injury. The court concluded the convictions were serious felonies because " 'there is great bodily injury.' " (*Cabrera*, at p. 482.)

Our Supreme Court granted review to determine whether the sentencing court's finding of great bodily injury violated the defendant's federal constitutional rights to have every fact that increases punishment submitted to a jury and proved beyond a reasonable doubt. (*Cabrera*, *supra*, 14 Cal.5th at pp. 482–483; see *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490.) Relevant here, the court rejected the Attorney General's argument that the jury's "finding of serious bodily injury necessarily establishes great bodily injury." (*Cabrera*, at p. 483.) The high court noted that serious bodily injury is statutorily defined as " 'a serious impairment of physical condition,' " and specified by a nonexclusive list of injuries with which the jury was instructed. (*Id.* at p. 484.) However, " ' "[t]he statutory definition of great bodily injury does not include a list of qualifying injuries" ' like the statutory definition of serious bodily injury does." (*Ibid.*) Thus, the high court noted, "when great bodily injury is an element of an offense, a jury instruction that the crime requires serious bodily injury is erroneous." (*Ibid.*)

The high court further noted that "[w]hat meets the statutory standard [for great bodily injury] is a factual question for the jury" (*Cabrera*, *supra*, 14 Cal.5th at p. 484), and it is the jury's province to determine whether an injury is " ' "significant or substantial" ' " or " ' "moderate" or "minor" ' " (*id.* at p. 485). The court therefore rejected the Attorney General's argument that both great bodily injury and serious bodily injury " 'require the same threshold severity of injury,' " stating the statutory text "does not resolve whether every kind of injury that qualifies as a serious bodily injury necessarily amounts to great bodily injury." (*Ibid.*) Ultimately, the court held that a finding of serious bodily injury does not necessarily establish great bodily injury, and "a jury could reasonably apply the statutory definitions of great bodily injury and serious

24.

bodily injury and find that an injury was serious but not great bodily injury." (*Id.* at p. 487.)

At most, *Cabrera* establishes the unremarkable proposition that the terms "great bodily injury" and "serious bodily injury" have different definitions under the law, and those distinctions may matter to a jury's factfinding. For example, bone fractures are included with the list of injuries constituting serious bodily injury. (See § 243, subd. (f)(4).) However, whether a bone fracture constitutes great bodily injury will depend on the fact finder's view of the severity of the injury. (*People v. Quinonez*, *supra*, 46 Cal.App.5th at pp. 464–465.) In many cases, injuries that are serious will also be great, and injuries that are great will also be serious. However, *Cabrera* establishes that the differing definitions of these terms involve different elements that may matter in close cases. *Cabrera* does not, as City contends, establish that either great bodily injury or serious bodily injury involves an injury that is more severe, or that either statutory definition is broader than the other.

Accordingly, cases interpreting great bodily injury and serious bodily injury under state criminal law do not alter our analysis.

## IV.    The Legislative History Supports Our Construction of the Statute

City asserts the legislative history of Senate Bill No. 1421 reflects a legislative intent to limit CPRA disclosures relating to police uses of force to only the most serious injuries. Accordingly, City argues, our construction of "great bodily injury," which includes some injuries that may not reach the level of "serious bodily injury," creates an absurd result.

Because we conclude the plain meaning of the statute is controlling, we have not considered the legislative history of Senate Bill No. 1421. (*Iloff v. LaPaille*, *supra*, 18 Cal.5th at pp. 560–561 [" '*If the statutory language is unclear*, we may look to legislative history . . . in determining how best to give effect to Legislative intent.' " (italics

25.

added)].) However, even if the statutory language was ambiguous, we would not agree with City's gloss on the legislative history. As we explain, the legislative history reflects the Legislature's express rejection of the term "serious bodily injury," and does not reflect an intent to limit disclosure to only those incidents involving injuries encompassed by subdivision (d)(4) of Government Code section 12525.2.

Early versions of Senate Bill No. 1421 would have provided for the disclosure of records and information concerning "[a]n incident in which the use of force by a peace officer or custodial officer against a person resulted in death, or in *serious bodily injury, as defined in subdivision (f) of [s]ection 243*."[13] (Sen. Bill No. 1421, as amended Apr. 2, 2018, some italics omitted.) However, the bill was amended to remove the references to serious bodily injury and section 243, and to instead provide for the disclosure of records and information concerning "[a]n incident in which the use of force by a peace officer or custodial officer against a person resulted in death, or in *great bodily injury*." (Sen. Bill No. 1421, as amended Aug. 23, 2018, original italics.) This amendment was intended to "clarify the level of injury that requires release of records is 'great bodily injury' due to the larger body of law interpreting that term, and existing incident tracking already done by law enforcement in lieu of 'serious bodily injury.' "[14] (Sen. Rules Com., Off. of Sen.

---

[13] Subdivision (d) of section 243 specifies the punishment for battery with serious bodily injury. As indicated above, subdivision (f) of section 243 defines "serious bodily injury" as "a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement."

[14] The reference to a "larger body of law interpreting that term" appears to be a reference to case law evaluating great bodily injury under section 12022.7.

Although not entirely clear, the reference to "existing incident tracking already done by law enforcement" may refer to the reporting obligations set forth in Government Code section 12525.2, subdivision (a), suggesting the Legislature was aware law enforcement agencies are required to report to the state incidents involving serious bodily

Floor Analyses, Unfinished Business, Analysis of Sen. Bill No. 1421, Aug. 23, 2018, p. 2.) The Legislature's intentional abandonment of the term "serious bodily injury" in favor of "great bodily injury" refutes City's argument that the Legislature intended to limit disclosure to the types of serious bodily injuries described in Government Code section 12525.2, subdivision (d)(4). Rather, the fair inference from this amendment is that the Legislature intended to expand the public's right of access beyond incidents involving serious bodily injury.

Nonetheless, City contends "other amendments [to Senate Bill No. 1421 are] more revealing of the legislative intent." City contends that various amendments to Senate Bill No. 1421 were "meant to *reduce* its scope down to only the most 'serious' complaints, *not to expand* its scope." In this regard, City points out the following. In addition to requiring disclosure of records relating to incidents involving serious bodily injury, early versions of Senate Bill No. 1421 would have required disclosure of (1) incidents involving an officer's discharge of a firearm at a person, (2) incidents involving an officer's discharge of an electronic control weapon or conducted energy device at or upon a person, and (3) incidents involving an officer's strike with an impact weapon or projectile to the head or neck of a person. (Sen. Bill No. 1421, as amended Apr. 2, 2018.) The provision relating to electronic control weapons and conducted energy devices was removed a few days prior to the removal of the reference to serious bodily injury. (Sen. Bill No. 1421, as amended Aug. 20, 2018.) The provision relating to impact weapons and projectiles was removed simultaneously with the reference to serious bodily injury. (Sen. Bill No. 1421, as amended Aug. 23, 2018.) Thus, as enacted, Senate Bill No. 1421 requires disclosure of reports, investigations, or findings relating to (1) incidents involving an officer's discharge of a firearm at a person, and (2) incidents involving use

---

injury, but nonetheless purposefully chose a different term – great bodily injury – to govern the scope of public disclosures.

27.

of force by an officer that resulted in death or great bodily injury.[15] (Sen. Bill No. 1421; Stats. 2018, ch. 988, § 2.)

We disagree with City's contention that the amendments removing the references to electronic control weapons, conducted energy devices, impact weapons, and projectiles reflects an intent to limit disclosure to only the " 'most serious' " uses of force. As stated, the Legislature's substitution of the term "great bodily injury" in place of "serious bodily injury" reflects an intent to expand the public's right of access, and the removal of provisions relating to incidents involving electronic control weapons, conducted energy devices, impact weapons, and projectiles (none of which required a showing of actual injury) appears to have been a trade-off for this expanded right of access.

Finally, City argues its construction of the term "great bodily injury" is supported by Senate Bill No. 776 (2019–2020 Reg. Sess.) (Senate Bill No. 776), a later bill introduced by Senate Bill No. 1421's author, which did not pass. An early version of this bill would have removed from section 832.7 the provision requiring disclosure of records and information concerning "[a]n incident in which the use of force by a peace officer or custodial officer against a person resulted in death, or in great bodily injury" and replaced it with a provision requiring disclosure of records and information concerning "[a]n incident involving the use of force by a peace officer or custodial officer against a person, provided that the underlying complaint was not determined to be frivolous." (Sen. Bill No. 776, as amended July 27, 2020.) City contends this bill would have been unnecessary if the Legislature understood "great bodily injury" in section 832.7 to refer to the definition in section 12022.7. This contention is based on City's argument that all uses of force result in pain, and all pain is great bodily injury under section 12022.7, and construing section 832.7 to refer to the definition in section 12022.7 therefore requires

---

[15] Other provisions of section 832.7 require disclosure of records relating to incidents not relevant here. (§ 832.7, subd. (b)(1)(A)(iii)–(iv), (B), (C).)

disclosure of records involving all uses of force. We have already rejected this argument. There are no relevant inferences to be drawn from Senate Bill No. 776 or the attempt to expand section 832.7 to require disclosure of records and information relating to all uses of force.

## V. City's Policy Considerations Are Unavailing

City argues that the effect of construing the term "great bodily injury" in section 832.7 to refer to the definition in section 12022.7 will require City to divert its finite resources away from public safety and toward combing records and deciphering "byzantine legalese." "But these are policy concerns for the Legislature to weigh, not this court when faced with the application of clear statutory language." (*Anton's Services Inc. v. Hagen* (2025) 116 Cal.App.5th 90, 107.) City's concerns regarding the burdens of complying with section 832.7 are, accordingly, " 'best directed to the Legislature.' " (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1112.)

## DISPOSITION

The petition for writ of mandate is denied, the order to show cause is discharged, and the stay previously imposed is lifted. Costs are awarded to ACLU. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

DETJEN, Acting P. J.

WE CONCUR:

MEEHAN, J.

DE SANTOS, J.

29.